IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STIFEL, NICOLAUS & COMPANY, INC.,
STIFEL FINANCIAL CORP., SAYBROOK
FUND INVESTORS, LLC, LDF
ACQUISITION, LLC, WELLS
FARGO BANK, N.A., and GODFREY
& KAHN, S.C.

                    Plaintiffs,                          OPINION & ORDER

          v.
                                                          13-cv-372-wmc

LAC DU FLAMBEAU BAND OF LAKE
SUPERIOR CHIPPEWA INDIANS and
LAKE OF THE TORCHES ECONOMIC
DEVELOPMENT CORPORATION,

                    Defendants.

In this civil action, plaintiffs seek (1) a declaration that a Tribal Court for the Lac du Flambeau Band of Lake Superior Chippewa Indians (the "Tribe") lacks subject-matter jurisdiction over them and (2) an injunction preventing any further action by the Tribe and the Lake of the Torches Economic Development Corporation in a recently-filed matter against plaintiffs in that forum. Before the court now is defendants' motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). (Dkt. #46.) The court will deny defendants' motion because (1) the arguments defendants advance go directly to the merits of the underlying disputes; and (2) neither logic nor law supports resolving the merits under the guise of a jurisdictional challenge.

BACKGROUND

**A.  The Commercial Transaction**

Defendant Lake of the Torches Economic Development Corporation ("Lake of the Torches") is a corporation established under tribal law and wholly owned by defendant Lac du Flambeau Band of Lake Superior Chippewa Indians, a federally-recognized Indian tribe organized under Section 16 of the Indian Reorganization Act of 1934 (25 U.S.C. §§ 461 *et seq.*).  In January 2008, Lake of the Torches issued $50 million in bonds and sold them to a brokerage firm, plaintiff Stifel, Nicolaus & Company, Inc. ("Stifel Nicolaus").  In turn, Stifel Nicolaus sold the bonds to plaintiff LDF Acquisition, LLC ("LDF"), a special purpose vehicle created by plaintiff Saybrook Tax Exempt Investors, LLC, predecessor in interest to plaintiff Saybrook Fund Investors, LLC ("Saybrook").  Plaintiff Godfrey & Kahn, S.C., a law firm, advised the parties on this complex transaction (the "Transaction").

The Transaction involved multiple written contracts.  Among other contracts, these included the terms of the bonds themselves, a bond purchase agreement and a Trust Indenture Agreement, the latter of which provided a description of the means by which Lake of the Torches would repay its debt.  The Trust Indenture Agreement designated plaintiff Wells Fargo Bank as the trustee.  The Tribe and Wells Fargo also executed a Tribal Agreement dated January 1, 2008, in which the Tribe guaranteed payment of the obligations of Lake of the Torches for payment of both principal and interest on the bonds.

Unfortunately, the various contracts include slightly differing versions of the Tribe's waiver of sovereign immunity, as well as consent to the jurisdiction of the District Court for the Western District of Wisconsin and, should the district court fail to exercise jurisdiction, of Wisconsin state courts.  For example, only some documents specified that the forum

2

selection clause was "to the exclusion of the jurisdiction of any court of the [Tribe]." (*See, e.g.*, Specimen Bond 5 (dkt. #1-1); Limited Offering Memorandum 19 (dkt. #1-2); Tribal Agreement 5 (dkt. #1-9).)

### B. Federal Litigation

When Lake of the Torches allegedly repudiated the bonds in 2009, Wells Fargo brought suit against it in the Western District of Wisconsin for breach of the Indenture. In answering, Lake of the Torches alleged sovereign immunity as an affirmative defense, arguing that the Trust Indenture Agreement in which it had allegedly waived its sovereign immunity was void as an unapproved "management contract" that violated the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721 ("IGRA"), and the corresponding regulations.

Judge Rudolph Randa, sitting by designation in the Western District of Wisconsin, agreed, finding that the Trust Indenture Agreement was void under IGRA and dismissing the suit for lack of jurisdiction over Lake of the Torches. *Wells Fargo Bank, N.A. v. Lake of Torches Econ. Dev. Corp.*, 677 F. Supp. 2d 1056 (W.D. Wis. 2010) (hereinafter *Wells Fargo Bank I*). Wells Fargo then sought leave to amend its complaint, arguing that even if the Indenture was void, the bonds and other documents surrounding the transaction (collectively, the "Transaction Documents") were not, and those documents also purported to waive sovereign immunity. The district court rejected this argument as well and denied the motion to amend. *Wells Fargo Bank, N.A. v. Lake of Torches Econ. Dev. Corp.*, 09-CV-768, 2010 WL 1687877 (W.D. Wis. Apr. 23, 2010) (hereinafter *Wells Fargo Bank II*).

The Seventh Circuit affirmed the holding that the Indenture was void as an unapproved management contract, but also found that the district court had abused its discretion in denying Wells Fargo leave to amend its complaint based on the Transaction Documents. *Wells Fargo Bank, N.A. v. Lake of Torches Econ. Dev. Corp.*, 658 F.3d 684 (7th Cir. 2011) (hereinafter *Wells Fargo Bank III*). Accordingly, the case was remanded to determine whether the Transaction Documents, "read separately or together," waived Lake of the Torches' sovereign immunity. *Id.* at 702.

The Seventh Circuit also identified another, "more fundamental" issue for consideration on remand: whether Wells Fargo had standing to seek the return of the funds to the bondholder, given that the Trust Indenture Agreement was void. *Id.* at 701. When attempts to avoid the standing issue failed, Wells Fargo voluntarily dismissed its suit pursuant to Federal Rule of Civil Procedure 41(a)(1).

### C. State Court Litigation

Saybrook and LDF then took up the fight in Wells Fargo's stead, filing a 24-count complaint in Waukesha County Circuit Court that asserted a breach of bond claim against Lake of the Torches and various alternative claims for misrepresentation, securities fraud, malpractice and equitable recission. *Saybrook Tax Exempt Investors, LLC v. Lac du Flambeau Band of Lake Superior Chippewa Indians,* Case No. 12-CV-187 (Waukesha Cnty. Cir. Ct.). Saybrook also filed a new action in the District Court for the Western District of Wisconsin reciting essentially the same complaint with the intent of establishing that this court lacked jurisdiction, thereby triggering a contractual waiver of Lake of the Torches' sovereign immunity in state court.

4

The Waukesha County Circuit Court stayed its proceedings, awaiting this court's determination of its own jurisdiction.  In March of 2013, this court determined that it lacked federal question jurisdiction over the new action under 28 U.S.C. § 1331, because the claim at issue was "unambiguously one for breach of contract under Wisconsin common law."  *Saybrook Tax Exempt Investors, LLC v. Lake of Torches Econ. Dev. Corp.*, 929 F. Supp. 2d 859 (W.D. Wis. 2013).  The court also ordered plaintiffs Saybrook and LDF to submit proof of Wisconsin citizenship of one of LDF's members in order to demonstrate that the court lacked diversity jurisdiction under 28 U.S.C. § 1332.  On April 1, 2013, with unchallenged proof that LDF shared Wisconsin citizenship with one or more defendants, this court dismissed that action for lack of subject matter jurisdiction.

### D. Tribal Litigation

On April 25, 2013, Lake of the Torches and the Tribe commenced an action against defendants in the Lac du Flambeau Tribal Court, seeking a declaration that all of the documents connected with the transaction were void.[1]  (Statement of Claim, dkt. #1-14.) Lake of the Torches and the Tribe also moved to stay the state court case pending a *Teague* Inter-Jurisdictional conference.  The State Court denied that motion on May 30, 2013. Defendants moved for leave to appeal this non-final order the same day.  The Waukesha court denied that petition on July 17, 2013.  On September 9, 2013, the Waukesha court

---

[1] Specifically, the Tribal Court action seeks declarations that (1) the documents are void under Tribal law and IGRA because they are inextricably intertwined with the Trust Indenture Agreement; (2) the documents are void as unapproved management contracts themselves; and (3) the Tribal Agreement and Tribal Resolution are void because they were not approved by a referendum vote of Tribe members or by the Secretary of the Interior, as required by the Tribal Constitution.

noted that it was satisfied a Teague conference was "warranted/mandated" "once the courts (state circuit court and tribal court) have overlapping jurisdictions."

The plaintiffs, meanwhile, filed a motion to dismiss in the Tribal Court for lack of jurisdiction and, on May 24, 2013, filed the present suit in this court seeking to enjoin the Tribal Court action.  On the same day, Stifel Financial Corp. and Stifel Nicolaus ("Stifel plaintiffs"), as well as LDF, Saybrook, and Wells Fargo ("Saybrook plaintiffs") filed for preliminary injunctions.  (Dkt. ##5, 17.)  Godfrey & Kahn filed for a preliminary injunction on May 29, 2013.  (Dkt. #37.)

On June 13, 2013, defendants filed a motion to dismiss this suit pursuant to Rules 8(a) and 12(b)(1) and (2) or, in the alternative, to stay the case pending either exhaustion of tribal remedies or resolution of jurisdictional issues through the *Teague* conference.  (Dkt. #45.)  On August 27, 2013, the Tribal Court issued an order and opinion denying the motion to dismiss filed by plaintiffs in this case and determining it had jurisdiction over them.  (Dkt. #72-1.)  In light of the Tribal Court's decision, plaintiffs moved this court to set their motions for a preliminary injunction for hearing as soon as possible.  (Dkt. #73.)  Defendants opposed this request for many of the same reasons they seek dismissal under Rule 12(b)(1).  (Dkt. #75.)

## OPINION

Before this court can rule on the preliminary injunction, it must determine whether it has jurisdiction.  It is to that question the court now turns.

As a preliminary matter, plaintiffs argue, and defendants do not appear to dispute, that this court has federal question jurisdiction under 28 U.S.C. § 1331.  Plaintiffs' suit

seeks a determination as to whether the Tribal Court has jurisdiction over them -- a federal question that must be answered by reference to federal law. *See, e.g.*, *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 852 (1985); *Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth.*, 207 F.3d 21, 27-28 (1st Cir. 2000) (collecting cases). Defendants acknowledge that in *National Farmers*, "the Supreme Court held that the complaint [as to whether federal law divested the tribe of an aspect of its sovereignty] raised a federal question." (Defs.' Reply (dkt. #70) 11.)  This court finds as a first step, therefore, that it has subject-matter jurisdiction over this action under 28 U.S.C. § 1331.

What defendants *do* dispute is this court's authority to *continue* to exercise jurisdiction over this case or, at least, to address the merits of this case while Tribal Court proceedings are pending.  As an initial argument, they argue that plaintiffs have not properly pled their case under Fed. R. Civ. P. 8.  Next, defendants argue that the doctrine of tribal exhaustion compels this court to defer to the Tribal Court, allowing it to determine the extent of its own jurisdiction.[2]  Additionally, defendants contend that even if the doctrine of tribal exhaustion does not bar the present suit, there has been no valid waiver of sovereign immunity such that this court can exercise jurisdiction over them.  Finally,

---

[2] As already noted, the Tribal Court found that it had jurisdiction over plaintiffs on August 27, 2013.  This does not necessarily moot the tribal exhaustion issue: "[o]nce in the tribal court system, an action is generally required to exhaust all levels including tribal appellate review."  Deborah F. Buckman, *Construction and Application of the Federal Tribal Exhaustion Doctrine*, 186 A.L.R. Fed. 71, 85 (2003); *e.g.*, *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16-17 (1987) ("The federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts. At a minimum, exhaustion of tribal remedies means that tribal appellate courts must have the opportunity to review the determinations of the lower tribal courts.").  The Lac du Flambeau Band of Lake Superior Chippewa Indians does have a Court of Appeals, whose jurisdiction is "limited to review of final orders, sentences, and judgments of the trial court." Tribal Code Ch. 80.202 (dkt. #1-13).

defendants argue that even if this court should find neither tribal exhaustion nor sovereign immunity bars the suit, the court should exercise its discretion to decline jurisdiction and stay this case.  The court addresses each of these arguments below.

## I.  Adequacy of Pleadings

Defendants first contend that plaintiffs have failed to plead this court's exercise of jurisdiction over them.  In particular, defendants point to the heightened pleading standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), requiring plaintiffs to allege facts that "plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 678.  Under this analysis, they argue, plaintiffs must plausibly suggest that defendants are not immune from suit by virtue of their tribal sovereignty, making insufficient plaintiffs' mere conclusory allegation that defendants waived their sovereign immunity.  (Defs.' Br. (dkt. #46) 14-15.)

Whether *Twombly* and *Iqbal* apply to statements of jurisdiction under Rule 8(a)(1) is far from certain, but it is also beside the point.[3]  Rule 8(a)(1) requires a short and plain

---

[3] There is some debate as to whether the heightened pleading standard of *Twombly* and *Iqbal* applies in the context of Rule 8(a)(1), which requires that a pleading stating a claim for relief contain "a short and plain statement of the grounds for the court's jurisdiction."  Fed. R. Civ. P. 8(a)(1).  Defendants point out that several circuits apply the "plausibility" test to jurisdictional allegations, though they also acknowledge that the Seventh Circuit has not made a similar determination.  (Defs.' Reply (dkt. #70) 4-5.)  Nevertheless, defendants urge this court to follow those other circuits and apply the heightened standard of *Twombly* and *Iqbal* to Rule 8(a)(1) as well as Rule 8(a)(2).  This court is reluctant to take up this question unless necessary, particularly when there remains a real question as to what pleading standard should apply.  *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1206 (2013 Supplement) ("A subset of judges has compounded the error by extending Twombly-Iqbal's plausibility standard to Rule 8(a)(1), but this ignores the absence of Rule 8(a)(2)'s 'showing' requirement in Rule 8(a)(1), which contributed to the holdings of Twombly and Iqbal.").  Here, it need not do so since even under a heightened

statement of the grounds for *subject-matter jurisdiction*.  Plaintiffs' complaint states that this court has federal question jurisdiction "because the question whether an Indian tribe retains the power to compel non-Indians such as Plaintiffs to submit to the civil jurisdiction of its [T]ribal [C]ourt is one that 'arises under' federal law."  (Compl. (dkt. #1) ¶ 13.)  Whether the heightened pleading standards of *Twombly* and *Iqbal* apply or not, this short plain statement of the grounds for federal question jurisdiction tracks settled Supreme Court precedent, *see Nat'l Farmers*, 471 U.S. at 852, and is sufficient to satisfy Rule 8(a)(1).

Defendants maintain that plaintiffs must also plausibly plead waiver of sovereign immunity to satisfy the jurisdictional pleading requirement of Rule 8(a)(1), but this proves too much.  In fairness, defendants cite various cases suggesting that sovereign immunity is "jurisdictional" in nature, particularly relying on a Tenth Circuit decision, *Miner Electric, Inc. v. Muscogee (Creek) Nation*, 505 F.3d 1007 (10th Cir. 2007).  In *Miner Electric*, the court held that "§ 1331 will only confer subject matter jurisdiction where another statute provides a waiver of tribal immunity or the tribe unequivocally waives its immunity."  *Id.* at 1011.  Thus, defendants argue, plaintiffs must plead both a federal question *and* a waiver of tribal immunity here for this suit to survive a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

Defendants' argument is unavailing in at least two fundamental respects.  First, the Seventh Circuit has noted that "sovereign immunity does *not* diminish a court's subject-matter jurisdiction," suggesting that waiver of sovereign immunity need not be pled to satisfy Rule 8(a)(1).  *Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008) (emphasis

pleading standard, this court's analysis as to whether plaintiffs have properly pled jurisdiction is unchanged as explained more fully above.

added) (citing *United States v. Cook Cnty.*, 167 F.3d 381 (7th Cir. 1999)); *see also Chasensky v. Walker*, No. 11-C-1152, 2012 WL 1287659, at *2 n.1 (E.D. Wis. Apr. 16, 2012) (noting that a motion to dismiss that raises a sovereign immunity defense is properly brought under Rule 12(b)(6), not Rule 12(b)(1)).  The Supreme Court's holding in *Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838 (1989) (per curiam), also suggests that sovereign immunity need not be pled, noting that "[t]ribal immunity may provide a federal defense" but that it is not a requirement of a well-pled complaint.  *Id.* at 841-42; *see also New York v. Shinnecock Indian Nation*, 686 F.3d 133, 138 (2d Cir. 2012); *Ninigret Dev. Corp.*, 207 F.3d at 28 ("[A]lthough tribal sovereign immunity is jurisdictional in nature, consideration of that issue always must await resolution of the antecedent issue of federal subject-matter jurisdiction.").

Second, even assuming plaintiffs did need to plead waiver of sovereign immunity, they have done so adequately by Rule 8 standards.  The complaint states that the Tribe and Lake of the Torches "unequivocally and expressly waived their sovereign immunity, both in the Bond Purchase Agreement and in several other Transaction Documents."  (Compl. (dkt. #1) ¶ 26.)  Moreover, it incorporates by reference and attaches all the documents in which the waiver appears, allowing this court to consider those documents in ruling on defendants' motion to dismiss.  *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  While defendants argue that the incorporation of the documents is not sufficiently detailed and that plaintiffs needed to "explain *why* they are valid and enforceable in light of the voiding of the Indenture and their independent management provisions" (Defs.' Reply (dkt. #70) 3-4), this would essentially require that plaintiffs lay out their entire case on the merits as to the documents' validity and meaning at the pleading stage -- a requirement unsupported by case law.

*Twombly* and *Iqbal* require only that the contents of the pleadings "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Applying this same standard to the jurisdictional statement (which, again, may or may not be appropriate), requires that plaintiffs do no more than allege enough facts to allow this court to draw the reasonable inference that defendants have waived their sovereign immunity.  Plaintiffs have not only incorporated numerous contract provisions purporting to waive sovereign immunity, but have also pled the fact that the Transaction Documents' validity does remain an open question.  (Compl. (dkt. #1) ¶ 37.) From these pleadings, the court can draw a reasonable inference that the Tribe and Lake of the Torches have waived their sovereign immunity without having to decide that question on the merits.

## II. Exhaustion of Tribal Remedies

Next, defendants argue that this court may not yet exercise jurisdiction over plaintiffs' case because plaintiffs have failed to exhaust their Tribal Court remedies. Specifically, defendants contend that the Tribal Court must first be allowed to determine that (a) it has jurisdiction over the dispute (which has now occurred at the Tribal Court level but has not moved through the appellate process); (b) none of the exceptions to the tribal exhaustion doctrine applies; (c) any forum-selection clauses in the Transaction Documents cannot be enforced since those documents are void; and (d) the forum selection clauses are not mandatory in any event, so they would not be enforceable here.

Plaintiffs respond to these expansive arguments in a variety of ways.  All plaintiffs argue that the forum selection clauses in the Transaction Documents foreclose Tribal Court

jurisdiction. As a result, plaintiffs maintain that this case falls into one of the exceptions to Tribal Court exhaustion described by the Supreme Court: "where the action is patently violative of express jurisdictional prohibitions." *Nevada v. Hicks*, 533 U.S. 353, 369 (2001) (quoting *Nat'l Farmers*, 471 U.S. at 856 n.21). This court agrees that the Transaction Documents are the appropriate place to begin its analysis. The Seventh Circuit has explained that in cases in which a tribe has "actively [sought] the federal forum" by submitting to the venue and jurisdiction of federal and state courts, "the application of the tribal exhaustion rule would not serve the policies articulated in *Iowa Mutual* and *National Farmers*." *Altheimer & Gray v. Sioux Mfg. Corp.*, 983 F.2d 803, 814-15 (7th Cir. 1993). Thus, should valid forum selection clauses exist in the Transaction Documents, *Altheimer & Gray* would appear to compel all courts to respect those clauses.[4]

---

[4] Defendants also argue that *Altheimer & Gray* does not change the general rule requiring litigants to exhaust their tribal remedies. First, they contend that the *Altheimer & Gray* court held only that exhaustion is not required where there is has been no direct attack on tribal jurisdiction because no case was then pending in tribal court. (Defs.' Br. (dkt. #46) 58.) The court finds this rationale unpersuasive. The language in *Altheimer & Gray* that defendants point to is actually a distinction between that case and the earlier decisions in *Iowa Mutual* and *National Farmers*. The Seventh Circuit also explained that whether exhaustion forwards the *policies* of *Iowa Mutual* and *National Farmers* is "[m]ore important[]" than those factual distinctions. 983 F.2d at 814. Next, defendants argue that *Altheimer & Gray* requires an examination of "the factual circumstances of each case," *Altheimer & Gray*, *id*. at 814, and that the circumstances of *this* case make it an excellent candidate for application of the tribal exhaustion doctrine, because it "indisputably concerns the very heart of reservation affairs." (Defs.' Reply (dkt. #70) 50.) Without opining on that argument, the court does not believe it changes the jurisdictional analysis here. The Seventh Circuit's decision was predicated on the policy justifications that "economic independence is the foundation of a tribe's self-determination" and that "[t]o refuse enforcement of [the forum selection clause] would be to undercut the Tribe's self-government and self-determination." *Altheimer & Gray*, 983 F.2d at 815. Defendants have offered no reason why similar *forum selection clauses* in this case differ from those that drove the *Altheimer & Gray* decision. Thus, this court finds *Altheimer & Gray* to be binding precedent.

12

Defendants argue that the clauses are not valid because (1) the Transaction Documents are void; and (2) the forum selection clauses are not mandatory and are thus unenforceable.  As for the first and broader of these arguments, defendants content that because the Transaction Documents are void, the forum selection clauses are likewise void and wholly irrelevant to an exhaustion analysis.  Plaintiffs responded by pointing out that even where contracts are potentially void and unenforceable, forum selection clauses therein are not, citing *Muzumdar v. Wellness Int'l Network, Ltd.*, 438 F.3d 759 (7th Cir. 2006) in support of this proposition.

In *Muzumdar*, the Seventh Circuit considered a provision in a series of contracts that required parties to submit to the non-exclusive jurisdiction of Texas courts, which defendants argued trumped a forum selection clause in those same contracts.  In that case, the subject contracts were allegedly void and unenforceable as against public policy because they constituted a pyramid scheme.  Thus, the question arose as to whether the forum selection clauses were themselves void and unenforceable, just as the contracts were alleged to be.  In holding that the forum selection clauses were enforceable, the Seventh Circuit observed that:

> Appellants also spend a good deal of time trying to convince us that because the contracts themselves are void and unenforceable as against public policy – i.e., they set out a pyramid scheme – the forum selection clauses are also void.  The logical conclusion of the argument would be that the federal courts in Illinois would first have to determine whether the contracts were void before they could decide whether, based on the forum selection clauses, they should be considering the cases at all.  An absurdity would arise if the courts in Illinois determined the contracts were not void and that therefore, based on valid forum selection clauses, the cases should be sent to Texas – for what? A determination as to whether the contracts are void?

*Muzumdar*, 438 F.3d at 762.

The same logic applies directly to this case, particularly given that the question of the Transaction Documents' validity is complex and unresolved. The complicated questions surrounding their claimed validity should not and need not be decided now, as part of a challenge to subject matter jurisdiction.[5] It would result in the same "absurdity" the Seventh Circuit identified were this court to find the Transaction Documents (and their forum selection clauses) void as a matter of law so that the Tribal Court could then exercise jurisdiction to determine -- for a second time -- whether the Transaction Documents are void as a matter of law. The court declines to precipitate such an illogical and inefficient result. Instead, just as the Seventh Circuit held in *Muzumdar,* this court finds the ultimate validity of the Transaction Documents is generally immaterial to an analysis of the documents' forum selection clauses and obviates the need to decide the merits of the underlying dispute at the Rule 12(b)(1) stage of litigation.[6]

Alternatively, defendants argue that even if the forum selection clauses are valid, they do not trump the exhaustion doctrine. First, defendants contend that the forum selection clauses establish only where defendants may be sued, not where they may sue others. Even

---

[5] Even the cases defendants cite in arguing against the forum selection clauses did not hold that the federal courts lacked *subject matter jurisdiction* over the controversy. *See, e.g., Gaming World Int'l, Ltd. v. White Earth Chippewa Indians*, 317 F.3d 840 (8th Cir. 2003) (error was in granting motion to compel arbitration when question existed as to validity of contracts containing arbitration clause); *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1421-22 (affirming that district court had subject matter jurisdiction but reversing on the merits of whether exhaustion was required). The court's holding today is simply that it has subject matter jurisdiction, not that the Transaction Documents are either valid or invalid as a matter of law.

[6] *Muzumdar* does point out that "a forum selection clause can be found invalid because the clause itself was procured by fraud." 438 F.3d at 762. Defendants do not argue that the clauses in question were procured by fraud, however, and so the court need not address that exception.

14

assuming it were so, that is exactly what has happened here:  plaintiffs have sued defendants in this court seeking declaratory and injunctive relief.  That defendants have also sued plaintiffs *elsewhere* does not change those facts.  If anything, defendants have again put forth an argument more properly directed to the question of whether plaintiffs are likely to succeed on the *merits* of this lawsuit -- that is, arguments potentially affecting the propriety of the preliminary injunction plaintiffs seek.  That is not the motion the court is currently considering.  So this argument, correct or not, has no impact on the question of this court's jurisdiction.

Second, defendants argue that the forum selection clauses are permissive, not mandatory, and therefore are not enforceable, pointing again to *Muzumdar* as support.  In that case, the Seventh Circuit stated that "where venue is specified with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive."  *Muzumdar*, 438 F.3d at 762.  While defendants maintain that the forum selection clauses in the Transaction Documents contain just this fault, they ignore the waiver of tribal exhaustion also present in various Transaction Documents.  (*See, e.g.*, Specimen Bond (dkt. #1-1) ("The Corporation hereby expressly waives its sovereign immunity from suit and any requirement for exhaustion of tribal remedies should an action be commenced . . . regarding the subject matter of the Indenture."); Limited Offering Memorandum (dkt. #1-2) ("The Corporation expressly waives its sovereign immunity from suit and any requirement for exhaustion of tribal remedies should an action be commenced . . . regarding the subject matter of the Indenture.").)  The court can find no case, and defendants offer none, suggesting that a

tribal entity may not waive exhaustion of tribal remedies in this way.  Given that the primary purpose of the tribal exhaustion doctrine is to foster tribal self-sufficiency, *Nat'l Farmers*, 471 U.S. at 856, the opposite makes sense:  "a tribe should be able to waive the exhaustion requirement whenever it determines that waiver is in its best interests."  Melissa L. Koehn, *Civil Jurisdiction: The Boundaries Between Federal and Trial Courts*, 29 Ariz. State L.J. 705, 731 (1997).[7]

Even assuming the tribal exhaustion issue turns solely on the forum selection clauses themselves, the court does not find the clauses to be "discretionary." The forum selection clause in the Specimen Bond, for example, reads:

> The Corporation expressly submits to and consents to the jurisdiction of the United States District Court for the Western District of Wisconsin (including all federal courts to which decisions of the Federal District court for the Western District of Wisconsin may be appealed), and, in the event (but only in the event) the said federal court fails to exercise jurisdiction, the courts of the State of Wisconsin wherein jurisdiction and venue are otherwise proper, *for the adjudication of <u>any</u> dispute or controversy arising out of this Bond, the Indenture, or the Bond Resolution* and including any amendment or supplement which may be made thereto, or to any transaction in connection therewith, *to the exclusion of the jurisdiction of <u>any</u> court of the Corporation*.

(Specimen Bond (dkt. #1-1) (italics and underlining added).)  While the clause may not contain express language that this court has "exclusive" jurisdiction, *see, e.g.*, *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 756-57 (7th Cir. 1992) (collecting cases with language manifesting an intent to make venue compulsory and exclusive), the clauses'

---

[7] As in *Muzumdar*, 438 F.3d at 762, it would also defy logic for this court to find that the documents containing these waivers are void, meaning exhaustion in Tribal Court is required, only to require that court to decide whether the documents are void.

express language makes jurisdiction in this court and, where jurisdiction does not lie here, in Wisconsin state courts, the only option and expressly excludes tribal court jurisdiction.[8]

In contrast, the proposition considered by the Seventh Circuit in *Muzumdar* involved situations in which a lawsuit is brought in one forum, but dismissed pursuant to a forum selection clause providing for exclusive venue elsewhere. *See Muzumdar*, 438 F.3d at 760 ("The cases were filed in the United States District Court for the Northern District of Illinois. . . They were dismissed without prejudice pursuant to forum selection clauses found in the relevant contracts. Both judges found that the proper forum was Dallas County, Texas."); *see also Paper Express*, 972 F.2d at 754 ("Paper Express . . . appeals from the dismissal for want of proper venue of a breach of warranty action brought in the district court [for the Northern District of Illinois]. The principal issue on appeal is whether the parties' contract included a valid forum-selection clause providing for exclusive venue in Germany."); *accord Docksider, Ltd. v. Sea Tech., Ltd.*, 875 F.2d 762 (9th Cir. 1989). This case is not factually analogous. Rather, in this case, the forum selection clause provides simply that jurisdiction and venue are appropriate here, in the Western District of Wisconsin, or failing that in state court, and that venue and jurisdiction are foreclosed in any court of the Tribe. Neither *Muzumdar* nor *Paper Express* directs this court to ignore those contractual provisions simply because the clause makes jurisdiction here permissible, rather than

---

[8] Given that the entities in this case are Wisconsin-based, the parties have only three options for purposes of this suit: (1) Wisconsin federal court, (2) Wisconsin state court, and (3) tribal court. The clause plainly permits jurisdiction in the Western District of Wisconsin, and in Wisconsin state court only should the Western District decline to exercise it. It also explicitly forecloses the tribal court option. Thus, as a practical matter, jurisdiction in this court *is* exclusive for the parties contracting here.

mandating a single court to the exclusion of *all others*, and defendants cite no cases suggesting that this is unenforceable.

## III.  Sovereign Immunity

Finally, defendants advance an argument closely connected with their Rule 8 argument: jurisdiction over them is lacking because the Tribe and Lake of the Torches have not validly waived their sovereign immunity.[9]  It is well-established that Indian tribes are "subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."  *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998).  This immunity applies to a tribe's activities regardless of where they took place and regardless of whether they are governmental or commercial.  *Id.* at 754-55.

Defendants contend that the documents on which plaintiffs rely are void as a matter of law and advance multiple arguments in support of their position, including: (1) that the documents are inextricably bound with one another and so the voiding of the Trust Indenture Agreement voids all the other documents as well; (2) even excluding the Trust Indenture Agreement, the documents taken together constitute a void, unapproved management contract under IGRA; and (3) each document standing alone fails to waive

---

[9] Among the many disputes between the parties is whether the Tribe, as well as the Corporation, has waived sovereign immunity pursuant to the waivers in the Transaction Documents since the documents are not consistent and not all of them purport to waive the sovereign immunity of both the Corporation and the Tribe.  This could well present an additional hurdle for plaintiffs, at least as far as proceeding against the Tribe.  *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) ("[A] waiver of sovereign immunity cannot be implied but must be unequivocally expressed.") (internal quotation marks omitted); *Ramey Constr. Co. v. Apache Tribe of Mescalevo Reservation*, 673 F.2d 315, 320 (10th Cir. 1982) (consent of tribal corporate entity to be sued did not waive sovereign immunity of the Tribe as a constitutional entity).  Again, however, this argument would require further inquiry into the merits, and the court declines to go any further down that road at this time.

defendants' sovereign immunity.  (Defs.' Br. (dkt. #46) 59-97.)  They devote almost 40 pages of their initial Memorandum and over 30 pages of their Reply to these arguments, all of which are predicated primarily on the purported invalidity of the Transaction Documents.

The court has already discussed its reasons for declining to resolve the underlying merits in the context of determining subject matter jurisdiction and will not repeat itself here.  Additionally, the court finds support for its decision in other case law.  For instance, while a district court may resolve disputed factual issues in the context of deciding a Rule 12(b)(1) motion, the Seventh Circuit has advised it "[does] not want district courts to resolve the merits of a dispute under the guise of jurisdiction."  *Pratt Cent. Park Ltd. P'ship v. Dames & Moore, Inc.*, 60 F.3d 350, 361 n.8 (7th Cir. 1995); *see also Elektra Indus., Inc. v. Honeywell, Inc.*, 58 F.R.D. 118, 120 (N.D. Ill. 1973) ("Where jurisdictional issues are inextricably intertwined with the merits of the case it is proper for the court to deny a motion to dismiss or for summary judgment for want of subject matter jurisdiction on the basis that there are genuine issues of material fact, the resolution of which will not only affect jurisdiction but also the very merits of the case.") (citing *Land v. Dollar,* 330 U.S. 731 (1947)); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350, at 245-49 (3d ed. 2004) ("If, however, a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial.").

Here, the material claim that underlies the controversy before this court is whether the Tribal Court has jurisdiction over the plaintiffs.  Going directly to the merits of that

question is the validity and enforceability of the Transaction Documents, since they contain, among other things, the clauses purporting to foreclose Tribal Court jurisdiction over any controversies arising out of the Bonds Transaction. To hold the Transaction Documents invalid would, therefore, in the Seventh Circuit's words "resolve the merits of [the] dispute under the guise of jurisdiction." *Pratt Cent. Park Ltd. P'ship*, 60 F.3d at 361 n.8.[10]

## IV.  Request to Decline Jurisdiction or Stay

This leaves defendants' alternative argument that, should this court find it *does* have subject matter jurisdiction and that jurisdiction has been properly pled, it should nevertheless exercise its discretion to decline that jurisdiction under the Declaratory Judgment Act. The central reason they offer is that a conference between the tribal and state courts must occur before the case can move forward, as they apparently have now agreed to do, pursuant to *Teague v. Bad River Band of Chippewa Indians*, 2000 WI 79, 236 Wis. 2d 384, 612 N.W.2d 709. To assert jurisdiction over this case now, defendants assert, would "chart a course for future litigants who wish to avoid [the *Teague* process] by running to federal court whenever parallel actions proceed in tribal and state court." (Defs.' Br. (dkt. #46) 101.) Defendants, therefore, request that this court enter a stay while Tribal Court remedies are exhausted or while the state court and the Tribal Court work out jurisdiction between them in the *Teague* conference, whichever comes first.

---

[10] Defendants also make a number of other arguments that relate to whether the waivers themselves unambiguously waive sovereign immunity. Before ruling on the enforceability of *portions* of the Transaction Documents, the court will rule on the enforceability of the Transaction Documents themselves, since the latter determination could moot the need to consider the former. Thus, the court will defer ruling on the validity of individual provisions of each individual document at this time.

In *Teague*, the Wisconsin Supreme Court considered whether a Tribal Court judgment could be denied full faith and credit because a complaint concerning the same subject matter had been first filed in state court. The court found that the real question was one "of judicial allocation of jurisdiction pursuant to principles of comity," 2000 WI 79, ¶ 34, but that "the law currently provides no protocols for state or tribal courts to follow in this situation." *Id.* The *Teague* court ultimately "conclude[d] that comity in this situation required that the circuit court and tribal court confer for purposes of allocating jurisdiction between the two sovereigns." *Id.* ¶ 37.

Plaintiffs argue that the present case is different from *Teague* in a critical way: here, the sole issue before this court is "whether the Tribal Court has jurisdiction over the Plaintiffs and the Tribal Court Action." (Stifel Pls.' Resp. (dkt. #68) 46.) Unlike in *Teague*, where there was "concurrent subject matter jurisdiction in state and tribal court," 2000 WI 79, ¶ 30, and all that remained was to allocate jurisdiction between the two, this action questions whether the Tribal Court has *any* jurisdiction over a suit arising from the Transaction and seeks a determination of that specific issue. Since states play "a limited role . . . in matters of tribal sovereignty," and this court is the "only court empowered to act" on this question, plaintiffs argue that to await the not-yet-convened *Teague* conference makes no sense. (Stifel Pls.' Resp. (dkt. #68) 63.)

To a point, the court agrees with plaintiffs. State law requires a *Teague* conference between the state and tribal courts to ensure that they decide jurisdictional allocation "in an atmosphere of mutual respect and cooperation." *Teague*, 2000 WI 79, ¶ 38. But, as plaintiffs point out, *Teague* assumes two courts with concurrent jurisdiction; plaintiffs' suit here alleges that, in a suit challenging the validity of the Transaction Documents, the Tribal

Court has *no* jurisdiction.  Awaiting the results of a *Teague* conference would, therefore, tell this court nothing regarding whether the Tribal Court *actually* has jurisdiction, and that is the specific, limited question this court has been asked to decide.  To enter a stay pending a *Teague* conference would, therefore, serve only to delay the present dispute before this court.[11]

In light of pending motions for preliminary injunction before this court, which include the allegations of irreparable harm, the court sees no value and potential harm in staying its own determinations further.  "[T]he pendency of another suit is not a sufficient reason to decline declaratory jurisdiction if that suit will not necessarily determine the controversy between the parties."  *Sears, Roebuck & Co. v. Am. Mut. Liab. Ins. Co.*, 372 F.2d 435, 438 (7th Cir. 1967).  Additionally, as previously discussed, "the 'extent to which Indian tribes have retained the power to regulate the affairs of non-Indians' is governed by federal law."  *Hicks*, 533 U.S. at 398 (quoting *Nat'l Farmers Union Ins. Co.*, 471 U.S. at 851-52).  Thus, this court is in a better position than the state court to answer the question plaintiffs have posed in this case.  Since the *Teague* conference will not definitively resolve the controversy of whether the Tribal Court can exercise jurisdiction over plaintiffs -- and in fact begins with the promise that it may -- and since this is a oure question of federal law, the court will exercise declaratory jurisdiction over that controversy.[12]

---

[11] In fact, the Waukesha County Circuit Court only recently indicated that in its view, a *Teague* conference must wait until the state and tribal courts have "overlapping jurisdiction."

[12] Defendants' alternative ground for justifying a stay -- that this court should await exhaustion of Tribal Court remedies, has already been substantially addressed above -- and the court will not repeat that discussion here.

ORDER

IT IS ORDERED that:

(1) defendants Lac du Flambeau Band of Lake Superior Chippewa Indians and Lake of the Torches Economic Development Corporation's Motion to Dismiss or in the Alternative to Stay is DENIED; and

(2) a preliminary injunction hearing will proceed on November 26, 2013, at 8:30 a.m., during which the parties may offer additional argument and stand on their paper submissions or offer additional evidence as they deem fit.

Entered this 28th day of October, 2013.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge